TIMOTHY COUGHLAN *vs.* STANLEY C. DOBSON *et al.*

APRIL 4, 1946.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J. This bill in equity was brought by the complainant to recover the sum of $2540 from the respondent Stanley C. Dobson and to subject certain of his real estate to an equitable attachment for the payment of that sum. The real estate in question stands in the names of Stanley C. Dobson and Edith Dobson, his second wife, who is the other respondent named in this bill, as joint tenants. The jurisdiction of equity under the allegations of the bill was not challenged by the respondents. After a hearing in the superior court on bill, answer and evidence, a final decree was entered denying and dismissing the bill of complaint. The cause is before us on complainant's appeal from that decree.

The bill in substance alleges that between 1940 and 1943 the complainant, a member of the United States Merchant Marine, sent to his sister Mary Dobson, the first wife of the respondent Stanley, money in various sums and from different places in the total amount of $2540 under an understanding with her that she would conserve such moneys for

him; that Stanley, with the knowledge of this arrangement, induced Mary to use complainant's money to purchase certain land described in the bill, title to which was taken in the names of Stanley and Mary as joint tenants, and to erect thereon a house; that after Mary's death Stanley married his present wife, the respondent Edith Dobson, and put the title to the property in question in both their names as joint tenants; that under these circumstances the complainant asked Stanley for the $2540 that he had sent to Mary; and that Stanley then agreed to pay him that sum, which he has ever since failed to do. The substantial relief prayed for is that Stanley be ordered and directed to pay complainant the sum of $2540 and that an equitable attachment be placed on the property described in the bill for the payment of that sum. There is also a prayer for general relief. The gist of respondents' answer is a general denial of the controlling allegations in the bill.

A careful reading of all the evidence shows that the evidence for the complainant fails to establish by reasonably competent proof that the $2540 was used by Stanley and Mary in the purchase of the land and in the building of the house described in the bill of complaint. On the contrary, Stanley's testimony, which is supported by documentary proof, is to the effect that the entire cost of the property involved in this cause was paid for by a first and second mortgage, plus a very small amount in cash which came from his earnings.

The evidence is in serious conflict as to a promise by Stanley to pay to the complainant the sum of $2540. According to complainant's testimony Stanley was "willing to settle" for the money that the former had sent to Mary; that in furtherance of this arrangement and at Stanley's suggestion a savings account, with an initial deposit of $10, was opened in a Providence bank in the joint names of complainant and his sister Catherine with the understanding that Stanley "would put in as much as possible each week until the amount was paid"; and, further, that in a letter to

Catherine, dated July 16, 1943, among other things, Stanley said: "I gave your answer about me and Timmie considerable thought. As I told you it might be some time before I can do anything so . . . I'm going to take out some insurance for the full amount and make you the beneficiary just in case anything did happen to me. Then when we're straightened out I can change the beneficiary."

Stanley testified that he was very much surprised when the complainant asked him for the sum in question and that as far as he knew it could have been "five dollars or five thousand"; that he did not know what to do about the matter, but that, since the money was given to his wife Mary, he told complainant "you can open an account and after I think it out and get everything straight in my mind what to do and I find that I should give you *any* money, why, then I will pay back into this account what I can. But it won't be for a long, long time because I owe a great deal of money as debts." (italics ours)

With reference to the matter of the insurance Stanley testified that when the complainant observed that the opening of a bank account for the purpose just indicated would give him no protection as Stanley "might die tomorrow", he, Stanley, suggested that he take out an insurance policy on his life and name the complainant as beneficiary, whereupon the latter replied: "Don't make me the beneficiary. Make Catherine the beneficiary." Such a policy was applied for but never issued.

There is another bit of evidence that requires mention. The complainant apparently sought to establish by way of inference that Mary had a checking account with a Providence bank wherein she deposited his money and that she withdrew from this account money that was used by Stanley for his own purposes. To this end he put in evidence two monthly statements from the bank to Mary, the first, dated June 1, 1942, showing a balance of $3.64, and the second, dated July 1, 1942, showing a balance of $3.16. The history of this account is undisclosed. There is no evidence in the

record before us as to its origin, deposits and withdrawals so as to connect that account with the subject matter in dispute. On this point Stanley testified that he first knew that Mary had a checking account when, following her death, he found the above-mentioned bank statements among her effects.

The complainant urged upon the trial justice and again upon us at the hearing of his appeal that Stanley was unjustly enriched at his expense. In a decision from the bench the trial justice fairly reviewed the evidence and expressed his conclusion in the following language: "Reluctantly on the evidence here, and I sympathize with this young officer, I have got to deny and dismiss his petition because he has failed to show me by a fair preponderance of the evidence that any of this money whatsoever ever got into Dobson's hands. A decree may be entered to that effect." We have scrutinized the evidence and after careful consideration of its scope and the reasonable inferences to be drawn therefrom we can find no valid reason to disagree with the trial justice.

The appeal of the complainant is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Edwin O. Halpert,* for complainant.

*McKiernan, McElroy & Going, Peter W. McKiernan, John C. Going,* for repondent.